UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
MICHAEL GROARK

       Petitioner,                  MEMORANDUM AND ORDER

  -against-                       Civil Action No.
                                  CV-04-4876 (DGT)
WILLIAM PHILLIPS, Superintendent,
Green Haven Correctional
Facility; and ELIOT SPITZER, New
York State Attorney General

       Respondents.

---------------------------------X

TRAGER, District Judge

    Respondents move to dismiss Michael Groark's ("petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first degree robbery under N.Y. Penal Law § 160.15[4] following a jury trial held in New York State County Court in Nassau County. Petitioner claims that he was denied effective assistance of counsel and denied the right to testify on his own behalf in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution. Petitioner filed this habeas petition after the expiration of the statutory period of limitation. Petitioner meets none of the exceptions for equitable tolling, and his petition is, therefore, dismissed.

**Background**

**(1)**

Petitioner was tried and convicted by a jury in New York State County Court in Nassau County. On September 4, 1997, he was sentenced to an indeterminate prison term of ten to twenty years and ordered to pay restitution. Petitioner unsuccessfully appealed and then collaterally attacked this conviction in the state courts, each time alleging his innocence as well as various constitutional violations. See People v. Groark, 252 A.D.2d 562, 675 N.Y.S.2d 890 (2d Dep't 1998) (appeal affirming the judgment of conviction); People v. Groark, 92 N.Y.2d 1032, 707 N.E.2d 452, 684 N.Y.S.2d 497 (1998) (denying application for leave to appeal); People v. Groark, 97982-97 (Nassau County Ct., Crim. Term: Part I, Oct. 8, 2002) (denying petitioner's Section 440.10 claim for ineffective assistance of counsel). In this habeas petition, Groark claims that he was denied effective assistance of counsel, partly because he was denied his right to testify and also because trial counsel did not put forward two alibi witnesses. These claims have been exhausted in the state courts.

**(2)**

At trial, the evidence showed that on August 16, 1996, at approximately 4:15 p.m., an armed man entered the Golden Touch jewelry store in Floral Park, Nassau County. After browsing, he showed the owner, Mamdouh Elzaky, a silver handgun and demanded

that the owner fill a briefcase with merchandise. Elzaky and his godmother, Lucia Merola, who was also present during the robbery, later identified the petitioner as the perpetrator both in a line up and at trial.

Petitioner was also connected to the robbery by a black Cadillac. Elizabeth John who lived near the store saw the perpetrator exit the store with the briefcase, which was too full to close. The perpetrator dropped several watches and pieces of jewelry before driving away in a black Cadillac car. At trial, John testified that the person she saw that day fit the petitioner's description and that a picture of a black Cadillac also matched the car. Petitioner's friend, Thomas Montelone, identified the car in the picture as belonging to petitioner. Montelone testified in exchange for a plea bargain resulting in no incarceration.

In his defense, petitioner's trial counsel called Assistant District Attorney, Joseph LaRocca. All of the questions dealt with his handling of the case and centered on Monteleone about whom he had no information. The trial counsel did not call the petitioner, or two other individuals that petitioner now identifies as alibi witnesses.

**Discussion**

**(1)**

The government has moved to dismiss this petition, filed on September 8, 2004, as untimely. Petitioner was required to file the petition within one year of the final conclusion of direct review or the expiration of time to seek such review. 28 U.S.C. § 2244(d)(1)(A). The New York Court of Appeals denied leave to appeal on December 2, 1998. People v. Groark, 92 N.Y.2d 1032, 707 N.E.2d 452, 684 N.Y.S.2d 497 (1998). Petitioner did not seek a writ of certiorari to the U.S. Supreme Court, making his conviction final ninety days after the denial of the state appeal. S. Ct. R. 13(1) (allowing ninety days to petition for a writ of certiorari after final judgment in the state courts); Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000). Petitioner did not file this federal petition until September 8, 2004, over five years past the deadline.

Petitioner only explanation for the extended delay is in regard to his Section 440.10 petition. He replaced his trial attorney for that petition and states that his "new attorney took nearly two full years to develop the facts and proof which was necessary to collaterally challenge his conviction [in state court]." (Petr.'s Br. 4.) Even crediting this account, no explanation is offered for the next three years that pass before petitioner filed this habeas petition in federal court.

4

Refusing to concede the timeliness point, petitioner argues that the court should apply an actual innocence exception to the statute's procedural requirements, 24 U.S.C. 2244(d)(1), relying on alibi evidence which was not presented at trial.  See Schlup v. Delo, 513 U.S. 298, 318-21 (1995) (creating an exception to judicially created procedural requirements for habeas corpus petitions in cases where a miscarriage of justice would occur due to the petitioner's actual innocence); Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (describing the process for evaluating potential actual innocence claims that are statutorily untimely).

**(2)**

In Schlup v. Delo, 513 U.S. 298 (1994), the Supreme Court established an exception to judicially created procedural bars to the review of habeas petitions in which a constitutional violation results in the conviction of someone who is actually innocent.  In such cases "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  Id. at 327. Furthermore, in evaluating such petitions, "the District Court must assess the probative force of the newly presented evidence in connection with the evidence presented at trial."  Id. at 331.

The Second Circuit has not yet determined whether Schlup's "innocence gateway" for judicially created procedural bars also applies to procedural bars created by the passage of the Anti-

Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1). Doe v. Menefee, 391 F.3d 147, 161, 174 (2d Cir. 2004). However, in dicta, the Second Circuit directed district courts to apply Schlup in evaluating such claims in order to present a record for the circuit court to decide if this standard should apply. Menefee, 391 F.3d at 161. In such cases, if the district court finds the petitioner innocent under the Schlup standard, it must then determine two legal questions: (1) whether this standard should, indeed, apply to claims untimely under AEDPA and (2) whether the petitioner had to pursue the claim with reasonable diligence. Id.

Under the Schlup standard, the first step is to determine whether the petitioner presented a credible claim of innocence based on reliable new evidence that was not presented at trial. Menefee, 391 F.3d at 161. The district court must evaluate the reliability of the new evidence by "considering it on its own merits and, where appropriate, in light of the pre-existing evidence in the record." Id.

If the court determines that the new evidence is reliable, the claim must be considered in light of all available evidence, regardless of its admissibility. Id. at 162. The court then determines whether all the evidence shows that "no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." Id. at 162 (citing Schlup, 513 U.S. at 327). If so,

then petitioner "may invoke the actual innocence gateway and obtain review of the merits of his claims." Menefee, 391 F.3d at 162.

(3)

In this case, the petitioner identifies three pieces of evidence which were not considered during trial: his own affidavit and the affidavits of two witnesses who petitioner alleges would establish an alibi defense.

With respect to his own affidavit, petitioner now claims that at the time of the crime he was working at a construction site in Queens, New York, and then went to a standing appointment with his barber to get his hair cut as he did every other Friday.

Petitioner argues that the combined statements of his coworker and his barber establish an alibi for approximately 4:15 p.m., the time the crime occurred. Petitioner's coworker, Gegorio Gigliotti, signed a sworn statement on March 7, 2000 that he and petitioner supervised a construction site in Queens, New York on August 16, 1996 from the hours of 8:00 a.m. to 4:00 p.m. (Gigliotti Aff.) Petitioner's barber, Rocco Loccisano, signed an affirmation stating that petitioner had been at an appointment with him on August 16, 1996, "as he had been every Friday at 4:00 p.m. for the past (2) years." (Loccisano Aff.) Loccisano signed this statement on March 7, 2000.

This new evidence offered by petitioner is contradictory,

unreliable and fails to establish an alibi.  Petitioner blames ineffective assistance of counsel for not presenting this evidence at trial.  However, petitioner did not submit the affidavits prior to his petition to the state courts under Section 440.10, over three years after his trial.  See Schlup, 513 U.S. at 332 ("[T]he court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence.").

More importantly, petitioner's statement that he had a standing appointment every other week for a hair cut contradicts Loccisano's statement that he came in every week.  Furthermore, Loccisano's affirmation was made a full four years after the date of the robbery.  Considering the contradiction and the date of the affirmation, it is hard to believe that Loccisano remembered that petitioner came to the barbershop for a haircut on every Friday without exception and on this Friday, in particular. Furthermore, Gigliotti's affidavit does not state that he was with petitioner until 4 p.m., rather it only states that they supervised the same site.  The record does not establish that it would not have been feasible to travel the distance between the construction site and the place of the robbery.  Even if petitioner supervised the site until 4 p.m., the record does not indicate that he could not have arrived at the jewelry store a short time later.  The evidence, therefore, is not reliable under

8

Schlup.  Menefee, 391 F.3d at 161.

Additionally, assuming arguendo that the evidence is reliable and thereby requires an analysis of the next step in the Schlup innocence standard, the evidence as a whole does not establish that "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. (quoting Schlup, 513 U.S. at 327).  None of the new evidence directly challenges evidence presented at trial by the eyewitnesses to the crime.  Considering the eyewitness identifications of petitioner and his car, the two alibi statements which were made years after the date in question do not counter the weight of the evidence presented at trial. Therefore, the new evidence does not meet the actual innocence standard under Schlup.

Since the Schlup innocence standard has not been met, it is unnecessary to address whether this standard would apply to petitions that are untimely under AEDPA.

Accordingly, respondents' motion to dismiss the § 2254 petition for a writ of habeas corpus is granted and the Clerk of the Court is directed to enter judgment to close the case.

Dated: Brooklyn, New York
       October 26, 2005

SO ORDERED:

/s/
David G. Trager
United States District Judge